IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03262-CYC

JUSTIN BRIAN GOMEZ,

      Plaintiff,

v.

UNITED STATES OF AMERICA, and
DEPARTMENT OF DEFENSE,

      Defendants.

---

## ORDER

---

**Cyrus Y. Chung, United States Magistrate Judge.**

      Plaintiff Justin Brian Gomez, proceeding *pro se*, asserts four claims under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*, for the defendants' alleged failure to take action to adjudicate violations of the Uniform Code of Military Justice; the Military Whistleblower Protection Act, 10 U.S.C. § 1034; and a statute prohibiting retaliatory mental health evaluation referrals. *See* ECF No. 13. The defendants move to dismiss for, amongst other things, lack of subject matter jurisdiction. ECF No. 25. On February 13, 2025, the plaintiff sought leave to file a second amended complaint pursuant to Fed. R. Civ. P. 15(a)(2). ECF No. 35. The proposed second amended complaint would add factual allegations but does not propose any additional claims or substantively modify the legal bases for the four claims asserted in the amended complaint. *See* ECF No. 35-2. Because the plaintiff lacks standing to assert a claim about a decision to prosecute others and because the other actions he challenges

are discretionary ones not reviewable by this Court, the motion to dismiss, ECF No. 25, is granted. Because amendment would be futile, the motion to amend, ECF No. 35, is denied.

## **BACKGROUND**

The plaintiff was a Captain in the United States Army. ECF No. 13-2 ¶ 42. He served in various capacities and, at the times relevant to his allegations, he was stationed at Fort Bliss, Texas or in Iraq. *Id.* He retired in 2013. *Id.* ¶ 142. The essence of his Amended Complaint centers on an incident in December 2006 in Iraq when, "unbeknownst to plaintiff at the time," an Army specialist pointed a machine gun at his back. *Id.* ¶ 11. When the plaintiff learned of what had happened, he attempted to have the incident investigated. *Id.* ¶ 12-13. This began his effort to seek justice. *Id. passim.* The plaintiff alleges nothing was ever done about the incident (and, in fact, that it was covered up) and, further, that he suffered retaliation for reporting and pursuing the matter. *Id. passim.* He further alleges that during his second deployment, in 2009-2010, he initiated an Equal Employment Opportunity Commission investigation into his commanding officer, which resulted in retaliation. *Id.* ¶¶ 21-33.

The plaintiff alleges that he suffered consequent retaliation in violation of 10 U.S.C. § 1034 — which prohibits retaliation against a service member who makes, or is perceived as making, a protected disclosure to an authorized government recipient, or who engages in protected conduct. For example, he alleges that after he informed his commanding officer of the December 2006 incident, he was "hazed" and "continually humiliated." *Id.* ¶ 15; *see also* ECF No. 13-13 at 3; ECF No. 13-15. The plaintiff also alleges that the retaliation violated 10 U.S.C. § 1090b — regulations related to commanding officer and supervisor referrals of armed forces

members for mental health evaluations. *E.g.*, ECF No. 13-2 at 1[1] (introduction); *id.* ¶¶ 18, 22. He alleges, among other things, that the retaliation included receiving a "downgraded combat service award" denial of Combat Action Badges and a "downturned evaluation report." *Id.* ¶¶ 18-23. In addition, the plaintiff alleges that he was relieved of command as part of the retaliation he suffered after initiating the investigation into his commanding officer and, as a result, his career progression was halted. *Id.* ¶ 29-30. In November 2011, he says, he was identified as a "high risk Soldier," resulting in a mental health evaluation, but was ultimately found fit for duty. *Id.* ¶¶ 36-37. In December 2011, however, the plaintiff "suffered significant reprisal," including being subjected to an "improper emergency involuntary inpatient mental health evaluation." *Id.* ¶¶ 38, 83-89, 133. According to the plaintiff, he was also improperly denied a retirement award, of which he was informed "on his final day of active duty." *Id.* ¶ 41.

The plaintiff asserts four claims under the APA: (1) failure to adjudicate violations of the Uniform Code of Military Justice ("UCMJ") ("Claim 1"); (2) failure to adjudicate violations of the Military Whistleblower Protection Act ("MWPA") ("Claim 2"); (3) failure to adjudicate additional MWPA violations ("Claim 3"); and (4) failure to adjudicate violations of 10 U.S.C. § 1090b relating to mental health evaluations ("Claim 4").

## LEGAL STANDARDS

### I.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the

---

[1] The plaintiff includes page numbers at the bottom of each page of the Amended Complaint. References here are either to the paragraph numbers in the Amended Complaint or, if no such number exists, to the page numbers that the Court's document filing system adds atop each page.

matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.* (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971) (internal citations omitted). The burden of establishing subject matter jurisdiction is on "the party asserting jurisdiction," which, here, is the plaintiff. *Pueblo of Jemez*, 790 F.3d at 1151.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. . . . In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. . . . Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. . . . When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. . . . A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. . . .

*Id.* at 1002-03 (internal citations omitted).

## II.    Amendment Pursuant to Fed. R. Civ. P. 15(a)(2)

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on the merits rather than on

procedural niceties." *Minter v. Prime Equip.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotations omitted). Therefore, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quotation marks omitted); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits.").

### III. Treatment of a *Pro Se* Plaintiff's Complaint

Federal courts must construe *pro se* plaintiffs' pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). But courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). As such, if courts "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [they] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## ANALYSIS

### I.  The Motion to Dismiss

The defendants assert, among other things, that the Court lacks jurisdiction over all four of the plaintiff's claims. ECF No. 25. As discussed below, the Court agrees.

### A.  Claim 1

With regard to Claim 1, the defendants argue that because the plaintiff lacks standing to bring this claim, the Court cannot exercise jurisdiction over it. ECF No. 25 at 2-3. The Constitution limits "[t]he judicial Power" to "Cases" and "Controversies." U.S. Const. art. III. The "doctrine of standing," in turn, "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). That doctrine requires the plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision" for a federal court to be able to exercise jurisdiction over the case. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted). Further, "[w]here, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (internal quotation marks and alterations omitted). As the Supreme Court has explained:

> To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. . . . For an injury to be particularized, it must affect the plaintiff in a personal and individual way.

*Id.* at 339 (internal quotations marks omitted). Notably, it "must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (1992) (internal quotation marks omitted).

Claim 1 fails to allege that the plaintiff suffered an injury in fact. His claim is that the defendants failed to hold others accountable through invocation of the UCMJ. ECF No. 13-2 ¶¶ 148-50. But "[t]he law is crystal clear: 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'" *Keyter v. 535 Members of 110th Congress*, 277 F. App'x 825, 827 (10th Cir. 2008) (summary order) (quoting *Diamond v. Charles*, 476 U.S. 54, 64 (1986)). While the plaintiff maintains that the defendants' inaction under the UCMJ has "severely impacted [his] mental health," ECF No. 28 at 3, he lacks standing to bring a claim alleging that others — even those who caused him harm — must be investigated or prosecuted by a legal authority. *James v. Willis*, No. 21-501, 2022 WL 481812, at *2 (2d Cir. Feb. 17, 2022) (finding that the plaintiffs "do not have a legally cognizable interest in whether Comito is investigated"); *Lefebure v. D'Aquilla*, 15 F.4th 650, 652 (5th Cir. 2021) ("[A] citizen does not have standing to challenge the policies of the prosecuting authority unless she herself is prosecuted or threatened with prosecution."). Accordingly, the plaintiff lacks standing to bring his first claim and the Court must dismiss it for lack of subject matter jurisdiction.

### B.  Claims 2 and 3

The plaintiff's second and third APA claims, which seek to compel the defendants to adjudicate alleged violations of the MWPA, also fall outside the Court's jurisdiction because they are subject to sovereign immunity. ECF No. 13-2 ¶¶ 151-56.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quotation marks omitted). The APA has a limited waiver, placing two constraints upon suits under it against the federal government. First, the suit must challenge a discrete agency action. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-63 (2004). More relevant here, because 5 U.S.C. § 706(1) authorizes courts

to "compel agency action unlawfully withheld," an APA "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is *required* to take." *Id.* at 64. Thus, when the agency action the plaintiff asks a court to compel is discretionary, the United States has not waived its sovereign immunity and a district court cannot exercise jurisdiction over such a claim. *See id.* at 63; *Wopsock v. Natchees*, 279 F. App'x 679, 687 (10th Cir. 2008) (dismissing counts "for lack of jurisdiction" where APA claim did not challenge required action). This is "to protect agencies from undue judicial interference with their lawful discretion." *S. Utah Wilderness All.*, 542 U.S. at 66.

The enforcement of the MWPA against the individuals identified in the Amended Complaint the plaintiff seeks is discretionary. That statute "establishes a detailed, comprehensive scheme for addressing whistleblower issues within the military." *Shaw v. Austin*, No. 20-2036 (RDM), 2023 WL 1438394, at *5 (D.D.C. Jan. 31, 2023). The plaintiff's allegations concede that the required steps in the process were followed here. For example, on May 7, 2012, the Office of the Inspector General of the Department of the Army provided its "final response," closed the case relating to the issues raised by the plaintiff, and informed the plaintiff that he could submit "an application to the Army Board for Correction of Military Records [ ] should he believe an error of injustice exists in his Army record," ECF No. 13-12 at 2, in compliance with 10 U.S.C. § 1034(d) and (g). The plaintiff submitted a second complaint and received a response from the Chief of the Investigations Division of the Office of the Inspector General for the Department of the Army on December 14, 2023, which informed him that a review had been completed, they "determined there was no instance in which [the plaintiff] was restricted from seeing an Inspector General or making a communication with a Member of Congress," and that they

considered the case closed. ECF No. 13-34 at 1 (Ex. 28 to the Amended Complaint). That, too, was within what the MWPA required. The plaintiff does not contend otherwise.

Instead, he seeks to compel enforcement action under the MWPA beyond the following of that required procedure. But 10 U.S.C. § 1034(b)(5) makes clear that "[n]either an initial determination under paragraph (4)(A) nor an investigation under paragraph (4)(D) is required in the case of an allegation made more than one year after the date on which the member becomes aware of the personnel action that is the subject of the allegation." And, given that the plaintiff's allegations of misconduct range from 2006 through 2013, the MWPA requires no action from the defendants at this point.

Further, to the extent the plaintiff attempts to compel the defendants to investigate individuals under the MWPA and to implement punishment under military law, that falls under the UCMJ, and judicial review of "courts martial and military commissions" is excluded under the APA. 5 U.S.C. § 701(b)(1)(F); *Moore v. Schlesinger*, 384 F. Supp. 163, 166 (D. Colo. 1974) ("There is no statutory authority for a civilian court review of these administrative proceedings, and they are expressly excluded from Administrative Procedure Act."); *see Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975) ("[M]ilitary law . . . is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." (quotation marks omitted)).

For these reasons, the Court lacks subject matter jurisdiction to adjudicate the plaintiff's second and third claims because (1) the United States has not waived sovereign immunity as to discretionary decisions, (2) the plaintiff has not identified any non-discretionary decision he is asking the Court to consider, and (3) to the extent he is asking the Court to compel the

defendants to investigate or punish the individuals identified in Claims 2 and 3, the Court does not have jurisdiction to do so.

### C.  Claim 4

The plaintiff's final claim alleges that the defendants failed to adjudicate violations of 10 U.S.C. § 1090b relating to the mental health evaluations he was ordered to undergo. ECF No. 13-2 ¶¶ 83-89. On his view, those mental health evaluations were in retaliation for whistleblower activities. *Id*. But Claim 4 must be dismissed for the same reasons Claims 2 and 3 must be dismissed—the Court lacks subject matter jurisdiction over such a request for relief.

To the extent Claim 4 challenges a commanding officer's decision to refer the plaintiff to an emergency mental health evaluation, that, again, is committed to agency discretion. Department of Defense Directive Number 6490.1, attached to the plaintiff's Amended Complaint, explains that "[t]he responsibility for determining whether or not referral for mental health evaluation should be made under the standards set forth in this section rests with the Service member's designated commanding officer at the time of the referral." ECF No. 13-8 at 2 (Directive 6490.1 § 4.2.1, Ex. 2 to the Amended Complaint). The Directive further states that the procedures for referral for an involuntary mental health evaluation "apply to mental health evaluations directed by a Service member's commanding officer as an exercise of the commanding officer's discretionary authority." *Id*. at 4 (Directive 6490.1 § 4.3.5). It makes clear, then, that the referral decision is discretionary. As explained above, because the APA does not waive sovereign immunity as to discretionary agency decisions, the Court lacks subject matter jurisdiction on this claim. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 828-29 (1985) (noting that "before any review at all may be had, a party must first clear the hurdle of § 701(a) . . . which exempts from judicial review those decisions committed to agency 'discretion'").

Because the Court lacks subject matter jurisdiction over all four claims asserted by the plaintiff, it cannot consider the merits of the case and need not consider the other arguments the defendants raise in their Motion.

## II.  The Motion to Amend

As noted above, leave to amend may be properly denied based on, among other things, futility. This is the sole argument advanced by the defendants in opposing amendment. ECF No. 36 at 4-7. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1230 (10th Cir. 2017) (quotation marks omitted). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . . ." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). "In ascertaining whether [a] plaintiff's proposed amended complaint is likely to survive a motion to dismiss, the court must construe the complaint in the light most favorable to [the] plaintiff, and the allegations in the complaint must be accepted as true." *Session v. Clements*, No. 14-cv-02406-PAB-KLM, 2016 WL 814715, at *2 (D. Colo. Mar. 1, 2016) (quotation marks omitted). Further, "[a]ny ambiguities must be resolved in favor of plaintiff, giving him the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in his complaint." *Myers v. City of Loveland, Colo.*, No. 12-cv-02317-REB-KLM, 2013 WL 3381276, at *6 (D. Colo. July 8, 2013) (quotation marks omitted) (modification in *Myers*).

Here, the proposed second amended complaint, ECF No. 35-2, does not cure the existing deficiencies of the plaintiff's claims. The plaintiff seeks to add additional facts to support his claims, *see* ECF No. 35-2 at 12, 15-19, but none of those additional facts would change the analysis above or the conclusion that the Court lacks jurisdiction over the plaintiff's claims.

The plaintiff does not argue otherwise. Instead, he urges the Court to defer decision on the futility of his amendment until a new round of dispositive motions is briefed. ECF No. 37 at 3-4. And it is true that, on occasion, courts do exactly that. *See, e.g., Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, No. 07-cv-01145-DME-KMT, 2008 WL 2520423, at *4 (D. Colo. June 20, 2008) ("Rather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place."). But here, the plaintiff's proposed amendment seeks to add heft to his claims' merits, and they are subject to dismissal because the Court cannot consider those merits. There is no need, then, to tarry in deciding the issue of futility. *See, e.g., Frost v. Medicine Man Techs. Inc.*, No. 23-cv-02607-GPG-KAS, 2024 WL 3400482, at *3 (D. Colo. July 12, 2024) (considering futility of amendment in the interest of efficiency); *FidoTV Channel, Inc. v. Inspirational Network, Inc.*, No. 18-cv-02295-CMA-NYW, 2019 WL 4043940, at *4 (D. Colo. Apr. 29, 2019) (same), *recommendation adopted,* 2019 WL 2950153 (D. Colo. July 9, 2019).

In sum, because it would be futile to grant the plaintiff leave to file the proposed second amended complaint, ECF No. 35-2, the motion to amend, ECF No. 35, must be denied. *See Lilja v. Am. Nat'l Prop. & Cas. Co.*, No. 23-cv-01981-SKC-MEH, 2024 WL 3792376, at *3 (D. Colo. Aug. 13, 2024) (denying motion to amend on futility grounds); *see Sanders v. Anotubby*, 631 F. App'x 618, 623 (10th Cir. 2015) (affirming district court's denial of motion to amend because the proposed amended complaint did not cure jurisdictional defects).

## **<u>CONCLUSION</u>**

For the foregoing reasons, it is hereby ORDERED that the plaintiff's Notice of Motion and Motion for Leave to Amend, ECF No. 35, is **DENIED**.

It is further ORDERED that the defendants' Motion to Dismiss, ECF No. 25, is **GRANTED**. Accordingly, the plaintiff's claims are dismissed without prejudice for lack of subject matter jurisdiction. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.").

DATED this 19th day of March, 2025, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge